Luke P. Breslin, Esq. (Bar ID# 029222010)
Kea S. Noyan, Esq. (Bar ID #322602021)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JASON GLASSMAN, | : | Hon._____, U.S.D.J. |
| | : | Civil Action No. _____ |
| Plaintiff, | : | (____/____) |
| v. | : | |
| | : | |
| THE INTERPUBLIC GROUP OF COMPANIES, INC., IPG HEALTH, LLC d/b/a FCB HEALTH/FCB HEALTH NEW YORK, JOHN DOES 1-10, and ABC CORP. 1-10. | : | **NOTICE AND PETITION FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, ESSEX COUNTY** |
| Defendants. | : | |

TO:  Melissa E. Rhoads, Clerk of Court
      United States District Court for the District of New Jersey
      Martin Luther King Building
      50 Walnut Street
      Newark, New Jersey 07102

      Debra M. McGarvey, Esq.
      Adam J. Kleinfeldt, Esq.
      Deutsch, Atkins & Kleinfeldt, P.C.
      21 Main Street, Suite 352
      Hackensack, New Jersey 07601
      *Attorneys for Plaintiff*

Defendants the Interpublic Group of Companies, Inc., and IPG Health, LLC d/b/a

FCB Health/FCB Health New York (collectively, "Defendants"), pursuant to 28 U.S.C. §§ 1332,

1441, and 1446, respectfully submit this Notice and Petition for Removal of a Case from the

Superior Court of New Jersey, Law Division, Essex County, bearing Docket No. ESX-L-4503-25

and as grounds for removal Defendants allege:

1.      On June 12, 2025, Jason Glassman ("Plaintiff") filed a civil action captioned, <u>Jason Glassman v. The Interpublic Group of Companies, Inc., IPG Health, LLC d/b/a FCB Health, et. al</u>, bearing Docket No. ESX-L-4503-25, in the Superior Court of New Jersey, Law Division, Essex County.  A true and correct copy of the Complaint in that action is attached hereto as **Exhibit A**.

2.      Defendants were served with, and accepted, a copy of the Summons and Complaint on June 26, 2025.  The Summons and Complaint were the initial pleadings setting forth the claims upon which Plaintiff's action is based.

3.      This notice and petition are timely filed within the provisions of 28 U.S.C. § 1446.  Defendants have affected removal within thirty (30) days of the service of the Complaint from which it could first be ascertained that this action is removable.  <u>See</u> 28 U.S.C. § 1446.

4.      No proceedings have taken place in the state court action.  Defendants have not served an answer or responsive pleading to Plaintiff's Complaint nor made any appearance or argument before the Superior Court of New Jersey, Law Division, Essex County.

5.      The Complaint alleges that Plaintiff is a resident of New Jersey.  <u>See</u> Complaint (Ex. A), ¶ 13.

6.      Upon information and belief, at the time of the filing of the Complaint, and continuing to the date of this notice and petition, Plaintiff has been and is a resident of New Jersey. <u>See</u> Complaint (Ex. A), ¶ 13.

7.      At the time of the filing of the Complaint and continuing to the date of this notice and petition, Defendant, Interpublic Group of Companies, Inc., was and is a Delaware corporation with its principal place of business in New York, New York.  Interpublic Health LLC d/b/a FCB Health was and is a Delaware limited liability company with its principal place of

business in New York, New York.  The sole member of Interpublic Health LLC d/b/a FCB Health is True North Communications Inc., which is a Delaware corporation with its principal place of business in New York, New York.  True North Communications Inc. is wholly owned by Interpublic Group of Companies, Inc.

8.     The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as Plaintiff seeks compensatory damages for loss wages (back and front pay) and other employee damages; compensatory damages for emotional distress, including but not limited to, emotional harm, stress, humiliation, mental anguish, and damage to reputation; punitive damages; attorneys' fees, pre- and post-judgement interest, and costs of suit; and such other relief as the Court may deem just and appropriate under the circumstances.

9.     This action is being removed to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1332(b) by virtue of its diversity of citizenship jurisdiction.

10.     Pursuant to 28 U.S.C. §1441(b), this action may be removed to this Court because it is founded on diversity of citizenship.

11.     This Court has supplemental jurisdiction over Plaintiff's causes of action as stated within the Complaint (Count I, Count II, and Count III) under 28 U.S.C. §§ 1367 & 1441(c). See Complaint (Ex. A).

12.     Defendants submit this notice and petition without waiving any defenses to the claims asserted by Plaintiff or concede that Plaintiff has pleaded claims upon which relief may be granted.

13.     The Superior Court of New Jersey, Essex County is located within the district of the United States District Court for the District of New Jersey.  As such, venue is proper

because the State Court Action lies within the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

14. Venue is also proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions alleged in the Complaint occurred within that judicial district.

15. Pursuant to 28 U.S.C. §1446(d), Defendants have given written notice of the removal of this action to all adverse parties and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Essex County.

16. This Notice of Removal is filed in compliance with Rule 11 of the Federal Rules of Civil Procedure.

WHEREFORE, Defendants respectfully request that the within action, now pending in the Superior Court of New Jersey, Law Division, Essex County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200

By: *s/ Luke P. Breslin*
Luke P. Breslin, Esq.
Kea S. Noyan, Esq.
*Attorneys for Defendants*

Dated: July 22, 2025

4930-6210-8243, v. 3

# EXHIBIT A

**DEBRA M. MCGARVEY, ESQ.**   Attorney ID#: 001802007
**ADAM J. KLEINFELDT, ESQ.**   Attorney ID#: 0026552004
**DEUTSCH ATKINS & KLEINFELDT, P.C.**
21 Main Street, Suite 352
Court Plaza South
Hackensack, New Jersey 07601
Tele: (201) 498-0900
Fax: (201) 498-0909
*Attorneys for Plaintiff, Jason Glassman*

| | |
|---|---|
| JASON GLASSMAN,<br><br>     Plaintiff,<br><br>  v.<br>THE INTERPUBLIC GROUP OF COMPANIES, INC., IPG HEALTH, LLC d/b/a FCB HEALTH/FCB HEALTH NEW YORK, John Does 1-10, and ABC Corps. 1-10.<br><br>     Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br><br>DOCKET NO.:<br><br>    CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Jason Glassman, by and through his attorneys DEUTSCH ATKINS & KLEINFELDT, P.C., alleges the following:

## NATURE OF THIS ACTION

1. Plaintiff brings this action to remedy age discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 *et seq.* (the "NJLAD").

2. Plaintiff brings this action to remedy age discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin Code. 8-101, *et seq.* (the "NYCHRL").

3. Plaintiff brings this action to remedy age discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law 290, *et seq.* (the "NYSHRL").

## PARTIES

4. Plaintiff Jason Glassman, (hereinafter, "Plaintiff") is an individual residing in the town of Essex Fells, County of Essex, and State of New Jersey.

5.     Upon information and belief, Defendant The Interpublic Group of Companies, Inc. ("Defendant IPG" and/or "IPG") is a holding company that owns and operates various advertising and marketing communications agencies, including Defendant IPG Health, LLC doing business as FCB Health/FCB Health New York ("Defendant IPG Health" and/or " IPG Health").

6.     Defendant IPG Health is a subsidiary of IPG and specializes in providing advertising and marketing communications to pharmaceutical and healthcare companies.

7.     Defendants IPG and IPG Health (collectively, "Defendants" and/or "the Company") are a single integrated enterprise as well as a joint employer of Plaintiff.

8.     At all relative times hereto, Defendants were Plaintiff's "employer" as defined in the NJLAD, NYCHRL, and NYSHRL.

9.     Plaintiff is an experienced pharmaceutical/healthcare copywriter, with ten (10) years of pharmaceutical/healthcare experience prior to joining Defendants.

10.     During the relevant time period, Defendants John Does 1-10 are currently unknown individuals and/or employees who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to this conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint and add these individual employees by name.

11.     During the relevant time period, Defendants ABC Corporations 1-10 are currently unknown entities who employed Plaintiff or aided and/or abetted the commission of conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

## JURISDICTION AND VENUE

12.     Venue lies in Essex County pursuant to R. 4:3-2(b).

13.     At all times relevant herein, Plaintiff resided in Essex County, New Jersey and worked remotely for Defendants from his residence in Essex County, New Jersey.

14.     Plaintiff worked out of New Jersey and the damages caused by the termination of his employment will be suffered in Essex County, New Jersey.

15.     Defendants engage in substantial transactions and business in Essex County, New Jersey, such that they have sufficient contacts with Essex County.

## FACTS COMMON TO ALL COUNTS

16.     Plaintiff is currently fifty-four (54) years old.

17.     In or around October 2021, Plaintiff began his employment with Defendants with the title of Group Copy Supervisor.

18.     Upon joining the Company, Plaintiff brought years of pharmaceutical copywriting experience, leading to his assignment on the ULTOMIRIS account.

19.     Plaintiff contributed to the launch of ULTOMIRIS's third indication, gMG, which required the development of new advertising and marketing materials in a relatively short amount of time.

20.     Plaintiff was one of the oldest members of his team, as the other team members were younger and some were about half his age.   Plaintiff had more work experience than the other members on his team.

21.     At the start of the launch, timelines for projects were very tight.  Subsequently, the ULTOMIRIS launch date was moved up by two months, creating even more aggressive deadlines. Plaintiff worked frantically on the ULTOMIRIS launch with his team to create all the

new advertising materials in accordance with tight guidelines.

22.     Most of the team at Defendants working on this launch were new to the agency and/or pharmaceutical sector, having little experience. Plaintiff, therefore, played an important role during the ULTOMIRIS launch.

23.     Due to the tight deadlines, Plaintiff worked significant additional hours around the clock from early January 2022 through late April 2022 to complete the launch work. During this time period, Plaintiff frequently worked more than fifty (50) hours per week, and, at times, up to seventy (70) hours per week. Plaintiff's contributions to the launch were critical.

24.     Upon completion of the ULTOMIRIS launch by Plaintiff and the team, the client was very satisfied with the results.

25.     Despite Plaintiff's successful and meaningful contributions, on or about May 18 2022, Plaintiff attended a meeting with his supervisor, Ely Levin ("Mr. Levin"), VP, Creative Director. At this meeting, Plaintiff was informed that he was being placed on a Performance Improvement Plan ("PIP").

26.     Plaintiff was shocked by the PIP as it was issued shortly after Plaintiff was a key contributor to a successful launch.  Because Plaintiff had provided meaningful contributions, the PIP contained inaccurate criticisms of Plaintiff's work.  The PIP also lacked clear examples of the alleged performance deficiencies (because there were none).

27.     Plaintiff objected to the PIP and prepared a detailed written response highlighting factual inaccuracies and troubling omissions. For example, the PIP failed to provide concrete examples of the alleged deficiencies and ignored the context of Plaintiff's work, including the difficult circumstances surrounding the launch

28.     Before submitting his formal response to the PIP, Mindy Franco ("Ms. Franco"),

Associate Director, Employee Relations, requested a meeting with Plaintiff.

29.    On or about June 2, 2022, Plaintiff met with Ms. Franco regarding the PIP and his working relationship with Mr. Levin.  Plaintiff verbally expressed to Ms. Franco that the PIP was unwarranted and that it lacked any specifics demonstrating that he did not perform his job.

30.    Shortly thereafter, Plaintiff met with Mr. Levin, Ms. Franco, and Laura Mizrahi ("Ms. Mizrahi"), EVP, Executive Creative Director, to discuss the PIP.  It was a brief meeting during which the alleged deficiencies in the PIP were not addressed, nor were Plaintiff's detailed responses outlining the factual inaccuracies in the PIP.  Instead, the discussion focused on employee development issues.

31.    Shortly thereafter, Plaintiff's work environment temporarily improved.

32.    In October 2022, Plaintiff successfully completed the PIP and received a positive annual review.

33.    Beginning in August/September 2022, the ULTOMIRIS gMG creative team underwent a multitude of staff changes. Executive Creative Director Ms. Mizrahi, who was fifty-eight (58) years old, was replaced by Daniel Mailliard ("Mr. Mailliard") who was fifty-five (55) years old. Cynthia Rothbard, EVP, CGD, who was sixty-two (62) years old was replaced by Fabio Rodrigues, EVP, Group Creative Director ("GCD"), who was either forty-four (44) or forty-five (45) years old. Then, in mid-February 2023, Mr. Levin, who was forty-five (45) years old, was terminated and replaced by Justin Kovarsy ("Mr. Kovarsy"), VP, Creative Director, who was either thirty-seven (37) or thirty-eight (38) years old. Additional team members, VP, Associate Creative Director Ethan Kaye ("Mr. Kaye"), who was either forty-two (42) or forty-three (43) years old, and Nikki Magers ("Ms. Magers"), who was either thirty-three (33) or thirty-four (34) years old, were also added to the team during the first quarter of 2023.

34.     Every creative team member that was now above Plaintiff was new and lacked experience on the account, except for Stephanie Krout, VP, Creative Director, who was either thirty-four (34) or thirty-five (35) years old.  Plaintiff became one of the oldest members on the creative team.

35.     In the early months of 2023, business was slow on the ULTOMIRIS account and Plaintiff was loaned out to another account (Cibinqo) to bolster his billable hours.

36.     Although Plaintiff did not have a lot of contact with the new creative leadership on ULTOMIRIS while he was on loan, he worked with Mr. Kaye to help him get acquainted with the healthcare professional ("HCP") side of the ULTOMIRIS business.

37.     After Mr. Levin was fired in February, Plaintiff was the only writer with extensive ULTOMIRIS gMG HCP knowledge at Defendants.

38.     Plaintiff and Mr. Kaye worked well together, and Mr. Kaye was grateful for the assistance and complimentary of Plaintiff's work.

39.     At the end of April 2023, Plaintiff returned to his team as a large ULTOMIRIS gMG project was starting. Plaintiff was again reporting directly to Mr. Kaye.

40.     Tyler Henchel ("Mr. Henchel"), the Associate Creative Director on the Cibinqo account, was also very complimentary of Plaintiff's work while Plaintiff was "on loan" to the account.  Mr. Henchel indicated that he passed along his praise of Plaintiff to Mr. Kovarsy. Mr. Henchel also informed Plaintiff that he always had the need for a good writer like Plaintiff should the ULTOMIRIS account work once again slow down.

41.     The first draft of the new ULTOMIRIS gMG project also had a very tight turnaround.

42.     While working on the new project, Plaintiff put in extra nights and weekend hours

to ensure the timely and successful completion of this job.

43.     By early May 2023, the draft was in good shape. However, on or around May 18, 2023, Plaintiff received a second PIP in the form of a brief email from Mr. Kovarsy, the VP, Creative Director.

44.     The email from Mr. Kovarsy was a "copy and paste" of four bullet points from Plaintiff's annual review - bullets that had been labeled "areas of improvement." Plaintiff's annual review was positive, and was not indicative of poor performance.

45.     Mr. Kovarsy's email also placed Plaintiff on a "final warning."

46.     This second PIP erroneously indicated that Plaintiff's first PIP (which Plaintiff had strenuously objected to and completed) occurred in December 2022 rather than May of 2022. This misstatement, and the contrived inaccuracies in the first PIP, made it appear as if Plaintiff had ongoing performance problems from the end of 2022 into 2023. This was false.

47.     Further, Mr. Kovarsy ignored the fact that Plaintiff's first PIP ended in September 2022 and that Plaintiff subsequently received a positive performance review for the year.

48.     The second PIP also inaccurately claimed that Plaintiff's performance was sub-par. This simply was not the case. Rather, Plaintiff was an even more significant contributor on the ULTOMIRIS gMG project during that time.

49.     Plaintiff contested the second PIP in writing. Plaintiff further sought an explanation for why the PIP was given and the details behind it. However, no details were provided.

50.     Sean Ahearn from Human Resources claimed to Plaintiff that he was not involved in Plaintiff's performance discussions, but that Mr. Mailliard, EVP, Group Creative Director, was. Mr. Ahearn was supposed to schedule a meeting with Mr. Mailliard and Plaintiff to discuss the second PIP, but he never did.

51.   While Mr. Kovarsy was on paternity leave, Mr. Kaye, who was Plaintiff's supervisor, spoke briefly with Plaintiff about the PIP even though he did not write the PIP and appeared to have little to no involvement with it.

52.   The meeting lasted only about 30 minutes and Mr. Kaye only discussed the first bullet point, in which Mr. Kaye disagreed with the PIP's contention that Plaintiff was not collaborative. Plaintiff subsequently documented Mr. Kaye's comments in his response to the second PIP.

53.   From mid-May 2023 to mid-June 2023 repeated concerted efforts were made to bolster the pretextual contention that Plaintiff was a poor performer.  Defendants were "papering the file" to make it appear factual grounds existed to terminate another older employee.

54.   In an effort to establish false paperwork to justify Plaintiff's termination, Plaintiff was asked to alter his timesheets to make it appear that Plaintiff had worked fewer hours and contributed less than he actually did on the aforementioned large ULTOMIRIS gMG project. Plaintiff refused to alter his timesheets to make it appear that he performed less work than he had actually performed.

55.   Despite Plaintiff's best efforts to engage Defendants' management and Human Resources in a discussion regarding his PIP, Defendants failed to meaningfully engage with Plaintiff to discuss the second PIP or to consider Plaintiff's legitimate concerns that the PIP was inaccurate and unwarranted.

56.   When Plaintiff met with Mr. Kovarsy and Mr. Kaye to discuss the PIP and its inaccuracies, each meeting was brief and lacked any explanation of Plaintiff's alleged performance deficiencies.

57.   On or around June 16, 2023, approximately one month after the second PIP was

issued, Plaintiff was terminated. Defendants claimed the termination was for performance reasons. Plaintiff did not have performance issues, and the facts demonstrated that the criticism in both PIPs was not supported by actual facts.

58.    The purported concerns raised in both PIPs were pretextual and designed to conceal the discriminatory motive of Defendants to eliminate older employees in favor of a younger workforce.

59.    This effort to eliminate Defendants' older employees was further demonstrated by the peripheral employment actions taken by Defendants to drastically reduce the age of its workforce.

60.    The average age of the ULTOMIRIS gMG core team of twenty-eight (28) employees after Plaintiff's termination was approximately thirty-two (32) years of age.

61.    Defendants were also preparing to move Eric Bishea ("Mr. Bishea"), aged thirty-six (36) years old, onto the ULTOMIRIS gMG team to replace Plaintiff. Upon information and belief, Defendants replaced Plaintiff with Mr. Bishae or Matt Lebowitz ("Mr. Lebowitz"), both of whom are significantly younger than Plaintiff.

62.    After Defendants' purging of substantially older employees on the creative team, only one (1) employee over the age of fifty (50), Mr. Mailliard, remained employed.

63.    The other copywriters on the team were in their mid-twenties, so they lacked the overall pharmaceutical experience necessary to handle the role. In contrast, Plaintiff had approximately ten (10) years of pharma/health experience and remained a key contributor.

64.    Plaintiff was terminated due to his age, not for performance-related concerns. The performance concerns were pretext.

## COUNT I
### New Jersey Law Against Discrimination – Age Discrimination

**(All Defendants)**

65.     Plaintiff hereby repeats and re-alleges all of the allegations set forth above as if set forth at length herein.

66.     Plaintiff was performing his job satisfactorily.

67.     Defendants contrived false performance concerns pertaining to Plaintiff's performance.

68.     Plaintiff objected to the false performance concerns and provided factual information demonstrating that the performance concerns were false.  Defendants did not respond to Plaintiff's objections.  Further, certain supervisors of Plaintiff confirmed that the information contained in the PIPs was incorrect or admitted that Plaintiff's performance was satisfactory.

69.     Plaintiff was terminated from employment.

70.     The reasons provided by Defendants for the termination were pretext.

71.     Other circumstantial evidence suggests that Defendants terminated Plaintiff to replace Plaintiff with substantially younger individuals, and to terminate other older workers in favor of substantially younger individuals.

72.     Defendants disparately treated Plaintiff on the basis of his age.

73.     The actions of Defendants constitute age discrimination against Plaintiff in violation of the NJLAD.

74.     Plaintiff has suffered, and will continue to suffer monetary damages, compensatory damages, mental anguish, and humiliation because of the Defendants' actions.

75.     The conduct described herein was especially egregious, willful, wanton, and in reckless disregard of Plaintiff's rights. Defendants' upper level management either condoned or participated in the conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, and seeks the following relief:

(a) Compensatory damages for loss of wages (back pay and front pay) and other employee damages;

(b) Compensatory damages for emotional distress, including, but not limited to, emotional harm, stress, humiliation, mental anguish, and damage to reputation;

(c) Punitive damages;

(d) Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e) Such other relief as the Court may deem just and appropriate under the circumstances.

<u>**COUNT II**</u>
**New York City Human Rights Law ("NYCHRL")**
**(ALL DEFENDANTS)**

76. Plaintiff hereby repeats and re-alleges all of the allegations set forth above as if set forth at length herein.

77. Plaintiff was performing his job satisfactorily.

78. Defendants contrived false performance concerns pertaining to Plaintiff's performance.

79. Plaintiff objected to the false performance concerns and provided factual information demonstrating that the performance concerns were false. Defendants did not respond to Plaintiff's objections. Further, certain supervisors of Plaintiff confirmed that the information contained in the PIPs was incorrect or admitted that Plaintiff's performance was satisfactory.

80. Plaintiff was terminated from employment.

81.   The reasons provided by Defendants for the termination were pretext.

82.   Other circumstantial evidence suggests that Defendants terminated Plaintiff to replace Plaintiff with substantially younger individuals, and to terminate other older workers in favor of substantially younger individuals.

83.   Defendants disparately treated Plaintiff on the basis of his age.

84.   The actions of Defendants constitutes age discrimination against Plaintiff in violation of the NYCHRL.

85.   Plaintiff has suffered, and will continue to suffer monetary damages, compensatory damages, mental anguish, and humiliation because of the Defendants' actions.

86.   The conduct described herein was especially egregious, willful, wanton, and in reckless disregard of Plaintiff's rights. Defendants' upper level management either condoned or participated in the conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, and seeks the following relief:

(a)   Compensatory damages for loss of wages (back pay and front pay) and other employee damages;

(b)   Compensatory damages for emotional distress, including, but not limited to, emotional harm, stress, humiliation, mental anguish, and damage to reputation;

(c)   Punitive damages;

(d)   Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e)   Such other relief as the Court may deem just and appropriate under the circumstances.

<u>**COUNT III**</u>
**New York State Human Rights Law ("NYSHRL")**
**(ALL DEFENDANTS)**

87.     Plaintiff hereby repeats and re-alleges all of the allegations set forth above as if set forth at length herein.

88.     Plaintiff was performing his job satisfactorily.

89.     Defendants contrived false performance concerns pertaining to Plaintiff's performance.

90.     Plaintiff objected to the false performance concerns and provided factual information demonstrating that the performance concerns were false.  Defendants did not respond to Plaintiff's objections.  Further, certain supervisors of Plaintiff confirmed that the information contained in the PIPs was incorrect or admitted that Plaintiff's performance was satisfactory.

91.     Plaintiff was terminated from employment.

92.     The reasons provided by Defendants for the termination were pretext.

93.     Other circumstantial evidence suggests that Defendants terminated Plaintiff to replace Plaintiff with substantially younger individuals, and to terminate other older workers in favor of substantially younger individuals.

94.     Defendants disparately treated Plaintiff on the basis of his age.

95.     The actions of Defendants constitutes age discrimination against Plaintiff in violation of the NYSHRL.

96.     Plaintiff has suffered, and will continue to suffer monetary damages, compensatory damages, mental anguish, and humiliation because of the Defendants' actions.

97.     The conduct described herein was especially egregious, willful, wanton, and in reckless disregard of Plaintiff's rights. Defendants' upper level management either condoned or

participated in the conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, and seeks the following relief:

(a)    Compensatory damages for loss of wages (back pay and front pay) and other employee damages;

(b)    Compensatory damages for emotional distress, including, but not limited to, emotional harm, stress, humiliation, mental anguish, and damage to reputation;

(c)    Punitive damages;

(d)    Attorneys' fees, pre- and post-judgment interest, and costs of suit; and

(e)    Such other relief as the Court may deem just and appropriate under the circumstances.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
Attorneys for Plaintiff, *Jason Glassman*

By: ___*/s/ Debra M. McGarvey*_____
       DEBRA M. McGARVEY, ESQ.

Dated: June 12, 2025

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial jury as to all issues.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
Attorneys for Plaintiff, *Jason Glassman*


By:   */s/ Debra M. McGarvey*
         DEBRA M. McGARVEY, ESQ.

Dated: June 12, 2025


## DESIGNATION OF TRIAL COUNSEL

DEBRA M. McGARVEY AND ADAM J. KLEINFELDT, ESQ. are designated as trial counsel in this matter.


**DEUTSCH ATKINS & KLEINFELDT, P.C.**
Attorneys for Plaintiff, *Jason Glassman*


By:   */s/ Debra M. McGarvey*
         DEBRA M. McGARVEY, ESQ.

Dated: June 12, 2025

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment. If so, please attach a copy of each, or alternative state, under oath and certification: (a) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damages limits; and (g) medical payment limits.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
Attorneys for Plaintiff, *Jason Glassman*

By:  ___/s/ Debra M. McGarvey_____
         DEBRA M. McGARVEY, ESQ.

Dated:  June 12, 2025

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matters in controversy in this action are not subject of any other action pending in any other court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated.

**DEUTSCH ATKINS & KLEINFELDT, P.C.**
Attorneys for Plaintiff, *Jason Glassman*

By:  _/s/ Debra M. McGarvey_____
         DEBRA M. McGARVEY, ESQ.

Dated: June 12, 2025

# Civil Case Information Statement

**Case Details: ESSEX | Civil Part Docket# L-004503-25**

**Case Caption:** GLASSMAN JASON  VS INTERPUBLIC GROUP OF  COMPANIE

**Case Initiation Date:** 06/12/2025

**Attorney Name:** DEBRA MARIE MC GARVEY

**Firm Name:** DEUTSCH ATKINS & KLEINFELDT, P.C.

**Address:** 21 MAIN ST STE 352

HACKENSACK NJ 07601

**Phone:** 2014980900

**Name of Party:** PLAINTIFF : GLASSMAN, JASON

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: JASON GLASSMAN? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

06/12/2025

Dated

/s/ DEBRA MARIE MC GARVEY

Signed